**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-4570

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

IMOUDU IZEGWIRE, a/k/a David, a/k/a Imoudu Igewire,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Walter D. Kelley, Jr., District Judge. (2:05-cr-00153-WDK-JEB-3)

Submitted: January 14, 2010          Decided: March 22, 2010

Before TRAXLER, Chief Judge, and SHEDD and DAVIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Warren E. Gorman, Chevy Chase, Maryland, for Appellant. Dana J. Boente, Acting United States Attorney, Alexandria, Virginia, Darryl J. Mitchell, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Imoudu Izegwire appeals from his jury convictions for conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C.A. §§ 846 & 841(a)(1) (West 1999) (Count I), and conspiracy to launder monetary instruments, in violation of 18 U.S.C.A. §§ 1956(h) & 1956 (West Supp. 2009) (Count II), as well as from the 120-month concurrent sentences imposed by the district court for these convictions. We affirm.

I.

On November 18, 2005, a federal grand jury indicted Izegwire and two of his co-conspirators, Tolulope John and Fatoumata Toure, on one count of conspiracy to distribute and possess with intent to distribute heroin, and one count of conspiracy to launder monetary instruments.[1] Izegwire was arrested and made his initial appearance on March 8, 2006. John, who had left the United States in late 2000, was living in the United Kingdom. He was arrested there on March 1, 2006, but successfully fought extradition to the United States until March 8, 2007. He subsequently pled guilty prior to trial. Toure was

_____
[1] John and Toure were also charged with numerous substantive money laundering offenses.

2

arrested in the United States but also pled guilty prior to trial.

Following a series of pretrial motions, including motions to continue filed by both Izegwire and the government, trial commenced on February 26, 2008.  On February 29, 2008, the jury convicted Izegwire of both counts.  Using a special verdict form, the jury found that the United States had established, by a preponderance of the evidence, "that at least one act committed in furtherance of the alleged conspirac[ies] occurred in the Eastern District of Virginia."  S.J.A. 178, 179-80.  The jury also found that Izegwire "conspired to distribute and/or conspired to possess with intent to distribute . . . [s]ome amount less than '100 grams' of a mixture or substance containing a detectable amount of heroin."  S.J.A. 179.  This finding of drug quantity resulted in a statutory maximum sentence of 20 years imprisonment for the drug conspiracy charge.  The statutory maximum for the money laundering charge was 10 years imprisonment.

At sentencing, the district court attributed 500 grams of heroin to Izegwire, resulting in an offense level of 28 for the heroin conspiracy.  See U.S.S.G. § 2D1.1(c)(6) (2007).[2]  With a

_____

[2] The money laundering conspiracy conviction resulted in an offense level of 22.

3

three-level enhancement for his role in the offense, Izegwire's guideline range was 108 to 135 months imprisonment. The district court sentenced Izegwire to concurrent 120-month sentences on each count, followed by three years of supervised release.

## II.

### A.

Izegwire first appeals the district court's denial of his motion to dismiss the indictment based upon the five-year statute of limitations. We review de novo the trial court's denial of the motion. See United States v. Uribe-Rios, 558 F.3d 347, 351 (4th Cir. 2009).

Under 18 U.S.C.A. § 3282(a) (West Supp. 2009), "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." In conspiracy offenses, the "statute of limitations . . . runs from the last overt act during the existence of the conspiracy." Fiswick v. United States, 329 U.S. 211, 216 (1946); see also United States v. Brown, 332 F.3d 363, 373 (6th Cir. 2003). Furthermore, the conspiracy, once established, "is presumed to continue unless or until the defendant shows that it was terminated or he withdrew from it." United States v. Walker, 796 F.2d 43, 49 (4th Cir. 1986). The

4

"mere cessation of activity in furtherance of the conspiracy is insufficient. The defendant must show affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach his co-conspirators. The burden of proving withdrawal rests on the defendant." Id (citations omitted).

We find no error in the district court's rejection of Izegwire's motion to dismiss the charges against him based upon the statute of limitations. Izegwire and his co-conspirators were indicted on November 18, 2005. Izegwire does not argue that the indictment was not filed within five years of the termination of the charged conspiracies. However, he contends that he withdrew from the conspiracies more than five years prior to the indictment, i.e., before November 18, 2000. Izegwire, however, has failed to demonstrate that he withdrew from the conspiracies prior to November 18, 2000, or that the conspiracies ended before that date. On the contrary, the government's evidence indicates that neither occurred. There was evidence that members of the conspiracies continued to commit overt acts in furtherance of the conspiracy well after November 18, 2000. In addition, there was evidence that between December 1, 2000, and February 22, 2001, Izegwire directed Helena Hollo, his girlfriend at the time, to conduct several wire transfers of drug proceeds to John in the United Kingdom,

5

in furtherance of both the drug conspiracy and the money laundering conspiracy. Accordingly, the district court did not err in denying Izegwire's motion to dismiss on this basis.

B.

Izegwire next appeals the district court's denial of his motion to dismiss the charges against him for improper venue and its submission of the venue determination to the jury for its consideration.

"[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C.A. § 3237(a) (West 2000). "[A] conspiracy may be prosecuted in any district in which the agreement was formed or in which an act in furtherance of the conspiracy was committed." United States v. Gilliam, 975 F.2d 1050, 1057 (4th Cir. 1992). "To establish venue, the government need only show that an act occurred in the district by a preponderance of the evidence." United States v. Al-Talib, 55 F.3d 923, 928 (4th Cir. 1995).

While we normally review the issue of venue de novo, see United States v. Wilson, 262 F.3d 305, 320 (4th Cir. 2001), "[s]ubmitting the venue question to the jury is an appropriate procedure for resolving a factual dispute relating to venue," United States v. Ebersole, 411 F.3d 517, 526 n.10 (4th Cir.

6

2005). Here, the jury found that the government had proven "that at least one act committed in furtherance of [each] alleged conspiracy occurred in the Eastern District of Virginia." S.J.A. 178, 179-80. This finding was supported by the evidence. At a minimum, the government presented evidence that a co-conspirator collected drug money from Izegwire and another co-conspirator for John after John left the United States, and that at least one wire transfer of drug proceeds was sent by the co-conspirator from Alexandria, Virginia in the Eastern District of Virginia to John in the United Kingdom. Accordingly, the district court did not err in denying Izegwire's motion to dismiss the charges against him for lack of venue or in submitting the issue to the jury for its determination.

C.

Izegwire next appeals the district court's denial of his motion to dismiss the charges against him based upon an alleged violation of the Speedy Trial Act. See 18 U.S.C.A. § 3161 (West 2000 & Supp. 2009). We review the district court's legal conclusions de novo and its factual findings for clear error. See United States v. Stoudenmire, 74 F.3d 60, 63 (4th Cir. 1996).

The Speedy Trial Act provides that the trial of a defendant charged in an indictment "shall commence within seventy days

7

from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C.A. § 3161(c)(1) (West Supp. 2009). Pertinent to the case at hand, however, the Act provides for a number of excludable delays, including delay resulting from the granting of a continuance based on a finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C.A. § 3161(h)(7)(A) (West Supp. 2009). Factors to be considered in deciding whether to grant such a continuance include the defendant's need for "reasonable time to obtain counsel," for "continuity of counsel," and for "reasonable time necessary for effective preparation" of counsel. 18 U.S.C.A. § 3161(h)(7)(B)(iv). Additional excludable periods of delay include "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant," 18 U.S.C.A. § 3161(h)(1)(A), and "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," 18 U.S.C.A. § § 3161(h)(1)(D). The time from the filing of a motion until the conclusion of the hearing on the motion is excluded, even if the delay in holding the hearing was not reasonably necessary.

8

See Henderson v. United States, 476 U.S. 321, 330 (1986). "In a case involving several defendants, time excludable for one defendant is excludable for all defendants." United States v. Jarrell, 147 F.3d 315, 316 (4th Cir. 1998). "There is a strong preference for trying codefendants together as it promotes judicial efficiency by avoiding successive trials involving the same evidence." United States v. Khoury, 901 F.2d 948, 972 (11th Cir. 1990). Thus, "reasonable delay attributable to the fugitive status of a co-indictee is excludable as to those defendants awaiting trial." Id.

Having reviewed the record, including the numerous motions filed by both sides that resulted in delays as well as the extradition proceedings pursued against John, we find no reversible error by the district court in denying Izegwire's motion to dismiss under the Speedy Trial Act. The district court ordered six continuances of Izegwire's trial, some at the request of the defendant for various reasons, and some at the request of the government while it was attempting the extradition of John. In each case, the continuances and delays were authorized by the Act as excludable periods of time and the district court made the requisite finding that the ends of justice served by the continuances outweighed the best interests of the public and the defendant in a speedy trial, as required

9

by 18 U.S.C.A. § 3161(h)(7)(A).  Accordingly, Izegwire is not entitled to relief under the Speedy Trial Act.

III.

Izegwire also challenges his sentence, contending that the district court erred in finding that he was responsible for 500 grams of heroin when the jury had made a finding that he was responsible for less than 100 grams of heroin, and erred in applying a three-level enhancement for his role as a manager or supervisor.

As noted earlier, the jury returned a special verdict form at the conclusion of the trial finding that Izegwire had "conspired to distribute and/or conspired to possess with intent to distribute . . . [s]ome amount less than '100 grams' of a mixture or substance containing a detectable amount of heroin." S.J.A. 179.  This finding set the statutory maximum sentence for the drug conspiracy at 20 years.  The statutory maximum sentence for the money laundering conspiracy was 10 years.

The district court subsequently found, based upon a preponderance of the evidence, that Izegwire was supplied with a total of 500 grams of heroin by his co-conspirator John and applied a three-level enhancement for Izegwire's role in the offense.  This resulted in a guideline sentencing range of 108 to 135 months imprisonment.  The district court then imposed a

10

sentence of 120 months, which was within the guideline range and statutory maximum for each conviction. On appeal, Izegwire contends that the district court erred by attributing a drug quantity to him for purposes of sentencing that exceeded the jury's findings on the special verdict form.

Since _Apprendi v. New Jersey_, drug quantities that increase the statutory maximum sentence are elements of the offense and thus must be charged in the indictment and submitted to the jury for proof beyond a reasonable doubt. _See_ 530 U.S. 466, 490 (2000). While _Apprendi_ affects the calculation of the statutory maximum sentence that may be imposed, it does not affect the calculation of the applicable sentencing guideline range. "Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict." _United States v. Benkahla_, 530 F.3d 300, 312 (4th Cir. 2008), _cert. denied_ 129 S. Ct. 950 (2009); _see also United States v. Perry_, 560 F.3d 246, 258 (4th Cir. 2009) (holding that, after _United States v. Booker_, 543 U.S. 220 (2005), district courts may "continue to make factual findings concerning sentencing factors . . . by a preponderance of the evidence" and consider acquitted conduct when applying the guidelines in an advisory fashion). As long as the sentence imposed does not exceed the maximum

11

sentence authorized by the jury's verdict, the district court does not violate the Sixth Amendment by imposing a sentence based on a higher drug quantity than was determined by the jury. See United States v. Webb, 545 F.3d 673, 677 (8th Cir. 2008).

Here, the 120-month sentence imposed by the court was well within the statutory maximum of 20 years authorized by the jury's findings on drug quantity. Accordingly, the sentence does not violate the Sixth Amendment. To the extent Izegwire contends that the district court's factual finding was otherwise in error, we are unpersuaded. Drug quantity determinations are reviewed for clear error. See United States v. Fullilove, 388 F.3d 104, 106 (4th Cir. 2004). The district court found the testimony of John, Izegwire's co-conspirator, to be credible and found that John had supplied Izegwire with a total of 500 grams of heroin. Having reviewed the record as a whole, we cannot say that these findings were clearly erroneous.

We likewise reject Izegwire's contention that the district court erred in finding that he was a manager or supervisor and applying the three-level increase in Izegwire's offense level for his role in the offense. See U.S.S.G. § 3B1.1(b) (2007). The enhancement was based upon evidence that Izegwire directed Hollo to conduct wire transactions involving drug proceeds on several occasions. Izegwire did not contest the evidence, but argued that the enhancement should not apply in light of his

12

romantic relationship with Hollo and because Hollo had made other, legitimate wire transfers for him during this same time period.

The district court's "ruling regarding a role adjustment is a factual determination reviewed for clear error." United States v. Kellam, 568 F.3d 125, 147-48 (4th Cir. 2009). A defendant qualifies for the three-level enhancement if he "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b).[3] "Leadership over only one other participant is sufficient as long as there is some control exercised." United States v. Rashwan, 328 F.3d 160, 166 (4th Cir. 2003); see also U.S.S.G. § 3B1.1, cmt. n.2 ("To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants.").

The district court found that Izegwire played a managerial role because he directed Hollo to make the money wire transfers to John in furtherance of the conspiracies. Izegwire provided her with the money, along with the names and addresses of the recipients, and instructed her to use an alias each time she

---

[3] Izegwire does not argue that the criminal activity involved fewer than five participants.

13

made an illegitimate transfer.  We therefore conclude that the district court did not clearly err in finding that Izegwire acted as a manager or supervisor with respect to Hollo and in applying the three-level role enhancement on this basis.

IV.

For the foregoing reasons, we affirm Izegwire's convictions and sentences.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

14